# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:16-MC-9001-DGK |
| JONATHAN RUSSELL, | ) ) ) | |
| Defendant. | ) | |

## ORDER AFFIRMING ARBITRATION AWARD

This case arises out of a $1,433,008 arbitration award (the "Award") in favor of Defendant Jonathan Russell. After Plaintiff Great American Insurance Company denied Russell's claims for indemnity under a federal crop insurance policy, the parties proceeded to arbitration. A three-member arbitration panel (the "Panel") held that Great American was required to indemnify Russell's loss and issued the Award in his favor.

Now before the Court is Great American's Motion to Vacate Arbitration Award (Doc. 1). The motion is DENIED, and the Award is AFFIRMED.

**Background**

I.    **The Underlying Insurance Claim**

Great American is an approved crop insurance provider under the United States Department of Agriculture's Federal Crop Insurance Program (the "Program"), a federal benefit program established by the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq.*, and its implementing regulations, 7 C.F.R. §§ 400 *et seq*. The Federal Crop Insurance Corporation ("FCIC")[1]—a wholly-owned government corporation—administers the Program and promulgates

---
[1] The United States Department of Agriculture's Risk Management Agency ("RMA") manages the FCIC. As a

rules and regulations setting mandatory terms and conditions for crop insurance policies. So long as the approved private insurers use the standard policy terms and conditions established by FCIC's rules and regulations, FCIC reinsures and subsidizes the policies.

In 2013, Great American issued Jonathan Russell a policy through the Program that covered Russell's 2013 corn and soybean losses (the "Policy"). FCIC reinsured the Policy, which incorporated the FCIC's Common Crop Insurance Policy Basic Provisions (the "Basic Provisions") appearing at 7 C.F.R. § 457.8.[2]

On November 4, 2013, Russell claimed losses under the Policy for his 2013 corn and soybean crops due to drought. In early 2014, though, he amended his claim to allege that the loss was due not only to drought, but also to wind and rootworm damage. After Great American conducted an on-the-farm inspection in the spring of 2014, it denied Russell's claims based on its inability to substantiate an insurable cause of loss. Russell demanded arbitration under the Policy's arbitration clause.

## II.    Arbitration Proceedings

In January 2016, the arbitration Panel held a three-day evidentiary hearing on Russell's claims. Less than two months later, the Panel issued its award, which found that Russell was entitled to indemnity for his corn crop losses, but not his soybean losses, and awarded him $1,433,008.

In its analysis, the Panel first determined that Russell's corn crops were destroyed from a combination of drought, wind damage, and rootworm—all insurable perils. But Russell had delayed informing Great American that wind damage and rootworm were a contributing cause of

---

practical matter, however, RMA and FCIC act as one and the same, even though they remain legally separate.

[2] The Policy also consists of the "Coarse Grain Crop Provisions" and the "Special Provisions," which contain terms specific to each crop in each county.

the loss, so the Panel had to determine whether he forfeited his right to indemnity under ¶ 14(b)(1) of the Basic Provisions, which provides that an insured must give notice of "damage or loss" to the insurer within seventy-two hours of its initial discovery.

The Panel suggested that although Russell did not give notice that rootworm was a contributing cause of the loss within seventy-two hours of its discovery, ¶ 14(b)(1) requires only notice of "damage or loss," not notice of each contributing cause of such loss. Russell was, therefore, not required to list all insurable causes in his notice of loss since the damage from the three causes was singular and indivisible. And because no one disputed that Russell's November 2013 notice was timely, the Panel found he did not forfeit his right to indemnity.

The Panel went a step further, though, and concluded that even if Russell's notice was untimely, ¶ 14(b)(5) of the Basic Provisions excused that failure. That paragraph provides that an insured may be absolved of an untimely report of loss if the insurer has the "ability to accurately adjust the loss." Here, the Panel determined that Great American could have accurately adjusted Russell's loss by either: asking Russell to leave some crop rows unharvested or performing an on-the-farm inspection in the three weeks between when Russell notified Great American of the damage and when he harvested the crops.

The Panel found insufficient Great American's explanation that it had no reason to inspect what it thought was only a drought-induced loss in those three weeks. Great American, the Panel noted, was required to follow the FCIC's Loss Adjustment Manual Standards Handbook ("LAM"), which provided:

> A final inspection must be made in order to document production acreage, insured and uninsured causes of loss, and all other pertinent entries to determine the amount of indemnity, unless the notice has been withdrawn or cleared.
>
> A.     Field Visit. To make adequate determination, actual visits to the field(s) where the crop is/was grown must be made.

3

LAM ¶ 67. In the Panel's view, this provision obligated Great American to conduct a "timely" on-the-farm inspection, which it took to mean a pre-harvest review of the crops. Because Great American did not conduct a pre-harvest review, the Panel determined that "Great American . . . failed to make a timely on-the-farm inspection of the loss as required by the LAM." Award at ¶ III.A.5(a). Russell remained entitled to indemnity.

Because Russell was entitled to indemnity, the Panel had to determine the appropriate amount of damages for the loss. Russell submitted his corn sales records to prove his damages. Great American, in response, suggested that Russell may have hidden some of his corn production or sold corn without reporting sales. To support its position, Great American presented evidence that corn crop residue on Russell's farm included some healthy ears of corn as late as February 2014, and that Russell owned transportation equipment and storage facilities. A majority of the Panel[3] found Great American's circumstantial evidence unconvincing since Great American knew Russell owned the transportation and storage units before denying his claim, and LAM ¶ 90(B) cautions the insurer: "DO NOT rely solely on statements or evidence of sales to represent all of the production. Review all production evidence CLOSELY when the insured controls the transportation . . . or sales (warehouse) of a particular crop."

Thus, the Panel relied on Russell's records to find that he suffered an insurable corn crop loss and accepted the analysis of Defendant's damages expert, who calculated the total damage to the corn crops as $1,433,008. Plaintiff did not challenge this calculation or offer a different one.

## III. Federal Court Proceedings

Plaintiff moved to vacate the Award in May 2016, asserting two grounds for relief: 1) that

---

[3] One of the arbitrators dissented on this ground only, finding that Russell submitted insufficient evidence to establish a deficiency in crop yield.

the Panel failed to break down the Award by claim and 2) that the Award contained forbidden interpretations of federal crop insurance policy. The parties briefed the issues, and on April 14, 2017, the district court vacated the Panel's decision, finding it failed to properly break down the Award by claim. The district court's decision did not address Plaintiff's other argument.

On appeal, the Eighth Circuit reversed the district court's decision but remanded the case for the district court to consider Plaintiff's alternative argument that the Panel's decision erroneously interpreted federal crop insurance policy. The case was subsequently transferred to this Court.

Upon transfer (and at Great American's urging), the Court invited the FCIC to submit an amicus brief since a decision concerning "the proper division of authority between the arbitrator and the FCIC has the potential to affect significantly the administration of the federal statutory scheme." *Davis v. Producers Agric. Ins. Co.*, 762 F.3d 1276, 1284 (11th Cir. 2014). On October 16, 2019, the FCIC submitted its brief, which suggested that the Award should not be vacated. Although the FCIC believed that the Panel improperly interpreted one FCIC policy, it found that interpretation to be immaterial. Thus, it argued vacatur of the Award was improper.

The remaining issue—whether the Award contained improper interpretations—is now ripe for determination.

**Standard of Review**

Great American seeks to vacate the arbitration award under § 10 of the Federal Arbitration Act ("FAA") on the ground that the Panel "exceeded [its] powers" by making policy and procedure interpretations that were within the exclusive authority of the FCIC. 9 U.S.C. § 10(a)(4). As the moving party, Great American bears the burden of proof in establishing sufficient grounds for vacatur. *Am. Fiber Network, Inc. v. CenturyTel of Missouri, L.L.C.*, No. 09-9029-MC-SOW, 2010

WL 11619150, at *3 (W.D. Mo. Apr. 1, 2010).  "Although the regulations impose certain limitations on the powers of arbitrators assessing federally-reinsured crop insurance claims like Russell's, arbitral awards are still governed by the Federal Arbitration Act," which "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Great Am. Ins. Co. v. Russell*, 914 F.3d 1147, 1149-50 (8th Cir. 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Accordingly, arbitration decisions "are subject to limited judicial review." *McGrann v. First Albany Corp.*, 424 F.3d 743, 748–49 (8th Cir. 2005). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Great American claims that in rendering its decision, the Panel exceeded the scope of its authority by interpreting policy provisions, in violation of Basic Provision ¶ 20(a)(1), which provides:

> [I]f the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either [the insured] or [the insurer] must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

7 C.F.R. § 457.8 ¶ 20(a)(1).  The "[f]ailure to obtain any required interpretation from FCIC will result in nullification of any agreement or award." *Id*. at ¶ 20(a)(1)(ii).

The FCIC has issued interpretations of ¶ 20(a)(1) in the form of Final Agency Determinations, which are binding on all participants in the Program.  As is relevant here, the FCIC has recognized that not all interpretations are required to be submitted to FCIC under this provision.  Instead, the FCIC requires that only "if there is a *material* dispute regarding an interpretation of the policy or procedure, a FAD must be obtained from FCIC." FAD-230 (Doc.

6

2-4 at 4) (emphasis added).[4]  Basic Provision ¶ 20(a)(1) therefore requires that an arbitration award be vacated only when it contains policy or procedure interpretations that are material to the Award.

### Discussion

Here, Great American alleges that the Award must be vacated because the Panel improperly interpreted: 1) the Basic Provisions as requiring Great American to request representative samples and to require an on-the-farm inspection prior to the end of harvest; 2) the LAM to require a timely inspection of crops standing in the field; and 3) Great American's failure to comply with ¶¶ 67 and 76(D)(1) of the LAM as negating the requirements of ¶ 90(B).  The Court addresses each argument in turn.

**I.    The Panel did not interpret the Basic Provisions.**

First, Great American contends that the Panel misinterpreted ¶ 14(c) of the Basic Provisions as requiring insurers to request representative samples of an insured's crop and ¶ 14(b) as requiring the insurer to complete an on-the-farm inspection prior to the end of harvest.  These contentions are unavailing.

As an initial matter, the Award nowhere references 14(c)—which governs when an insured is required to leave representative samples intact—or attempts to explain its meaning.

Moreover, a cursory review of the Award shows that the Panel by no means found that a representative sample request or a pre-harvest review was required under the Basic Provisions. Although the Panel discussed Great American's ability to perform those tasks, it did so as part of its factual finding that Great American had the ability to accurately adjust the loss, despite failing to take any measures (such as requesting samples or conducting a pre-harvest inspection) to do so.

---

[4] Similarly, the FCIC requires an award to be nullified for inconsistency with a Final Agency Determination sought and issued after the award only if the inconsistency "materially affected the award." *Id*.

In short, the Panel made a factual determination that Great American could have accurately adjusted the loss by requesting samples or conducting a pre-harvest inspection; it did not interpret the Basic Provisions as making those tasks mandatory. Vacatur of the award is not required on this basis.

## II. Although the Panel interpreted ¶ 67 of the LAM, the interpretation was not material.

After determining that Great American had the ability to accurately adjust the loss, the Panel proceeded to find that Great American violated ¶ 67 of the LAM by failing "to make a timely on-the-farm inspection of the loss." Award at ¶ III.A.5(a). Paragraph ¶ 67, however, contains no requirement that an on-the-farm inspection be "timely," and by reading a timeliness requirement into it, the Panel improperly interpreted that provision.

Even so, the Award need not be vacated because the improper interpretation was immaterial to the outcome of the Award. Throughout the arbitration proceedings, Great American argued that Russell was not entitled to indemnity because he failed to comply with the notice requirement of ¶ 14(b)(1) by not timely listing rootworm as a cause of loss. The Panel found this argument unconvincing because ¶ 14(b)(5) of the Basic Provisions forgives late notice if the insurer has the "ability to accurately adjust the loss." As previously noted, the Panel determined, as a factual matter, that Great American had the ability to do so in this case by either conducting a pre-harvest on-the-farm inspection or requesting some crops be left unharvested. This finding alone was sufficient to find in favor of Russell.

Therefore, although the Panel went on to determine that Great American also violated the LAM by failing to conduct a "timely" on-the-farm inspection, this improper interpretation of the LAM was not material to the Award. And because the outcome of the Award was unaffected by the Panel's improper interpretation, nullification of the Award is improper.

## III. The Panel did not interpret a provision or policy as negating any requirement in ¶ 90(B) of the LAM.

Finally, Great American argues that the Panel engaged in improper interpretations of FCIC policy in determining the extent of Russell's loss. It argues that the Panel interpreted noncompliance with ¶¶ 67 and 76D(1) of the LAM "as negating a separate requirement found in LAM ¶ 90(B) (which prohibits Great American from relying solely on sales to represent production, particularly when the insured controls the transportation)." Suggs. in Supp. of Mot. to Vacate at 12 (Doc. 2). Great American claims that "[e]ven though the non-waivable policy terms place the burden on the policyholder to prove his loss was covered, the Panel interpreted policy and procedure to require an indemnity if Great American did not disprove the alleged loss at adjustment time." *Id*.

The Court finds that Great American's argument misconstrues the Award. Paragraph 76 of the LAM provides that "[t]he insured must establish the cause of loss; the adjuster will . . . [v]erify the cause of loss during the on-farm inspection." Contrary to Great American's assertion, the Panel did not shift the burden of proof to Great American, and, in fact, the Award expressly acknowledged that it was Russell's burden to prove an insurable loss. After weighing the evidence, however, the Panel concluded that Russell had carried his burden by establishing an insurable loss and proving the extent of the loss through his sales records.

Moreover, in weighing the evidence, the Panel considered Great American's suggestion that Russell had underreported his recorded sales. The Panel, however, noted that Great American was aware of LAM ¶ 90(B), which cautions the insurer not to rely on sale records in adjusting a claim when the insured controls the transportation of the crops or owns storage facilities. Even though Great American knew about LAM ¶ 90(B), by the time it conducted its on-farm inspection, no other direct evidence of sale production existed except for record sales. Thus, Great American's

argument that Russell's sales records did not establish the extent of the loss rested on circumstantial evidence that the Panel simply found unconvincing.

Throughout its analysis, the Panel neither drew an express connection between ¶¶ 67 and 76D(1) of the LAM and ¶ 90(B), nor interpreted any act or omission of ¶¶ 67 and 76D(1) as negating ¶ 90(B). To the extent the Panel implied a connection between the provisions, it was simply that one paragraph of the LAM complemented the requirements and goals of the other. Indeed, the Panel's suggestion that an earlier on-the-farm visit could have yielded more direct evidence of underreporting was a finding of fact; it was not a determination that Great American violated ¶ 90(B) by failing to do so.

In evaluating the extent of the loss, the Panel engaged in no interpretations—much less improper ones. The Award does not require nullification.

## Conclusion

Although the Panel improperly read a timeliness requirement into LAM ¶ 67, that interpretation was immaterial to the Award because the Panel had already determined Russell was entitled to indemnity for separate reasons. Thus, Great American's motion to vacate (Doc. 1) is DENIED. The Award is AFFIRMED.

**IT IS SO ORDERED.**

Dated: November 19, 2019            /s/ Greg Kays
                                    GREG KAYS, JUDGE
                                    UNITED STATES DISTRICT COURT